Carroll
No. 92-259

THE STATE OF NEW HAMPSHIRE

v.

JERARD S. WISOWATY

June 24, 1993

*Jeffrey R. Howard*, attorney general (*Karen A. Levchuk*, assistant attorney general, on the brief and orally), for the State.

*Bigelow and Puglisi*, of Boston, Massachusetts (*M. Blair Bigelow* on the brief and orally), for the defendant.

HORTON, J. The defendant, Jerard S. Wisowaty, was convicted of aggravated felonious sexual assault, RSA 632-A:2 (1986), *amended by* RSA 632-A:2 (Supp. 1992), kidnapping, RSA 633:1 (1986), and theft of a firearm, RSA 637:3 (1986). After his convictions were affirmed by this court, *State v. Wisowaty*, 133 N.H. 604, 580 A.2d 1079 (1990), the defendant moved for a new trial. The Superior Court (*O'Neil*, J.), denied the motion. On appeal, the defendant contends that his trial attorney made numerous errors, the cumulative effect of which denied him the right under the New Hampshire and Federal Constitutions to the effective assistance of counsel. We affirm.

Many of the facts underlying this case were set forth in *Wisowaty*, 133 N.H. at 605–06, 580 A.2d at 1079–80, and need only be summarized briefly here. In the early hours of April 29, 1987, the victim was driving home during a snowstorm when her truck skidded off the road. Taking a flashlight and .38 caliber handgun with her, the victim left her truck to seek help. After the victim had walked a short distance, the defendant appeared in a pickup truck and offered to drive her to a phone booth a few miles away. The victim accepted the invitation and got into the truck. The defendant, who introduced himself as "Jerry," was wearing a wool overcoat, and he had a dog beside him on the truck's front seat. The victim noticed an empty space in the truck's dashboard where a radio normally would have been located.

After they had traveled only a short distance, it became apparent that the telephone lines in the area had probably been knocked down by the storm, and the defendant agreed to drive the victim to her home. The defendant, however, did not stop when they arrived at the road leading to the victim's home. The victim attempted to jump from the moving truck, but the defendant held her back by grabbing her hair. The defendant stopped the truck, and dragged the victim from the vehicle. During an ensuing struggle, the victim bit the defendant's right hand and pulled a ring from one of his fingers. She also managed to remove the .38 caliber revolver from her jacket and fire two shots, neither of which struck the defendant. The defendant took the gun, and then sexually assaulted the victim by forcing her to perform fellatio.

The defendant was indicted for aggravated felonious sexual assault, kidnapping, and theft of a firearm. At trial, the victim identified the defendant and described the assault in detail. The State provided evidence corroborating much of her testimony. For example, the State established that the defendant's parents owned a dog matching the description of the dog the victim saw in the defendant's truck. The State provided evidence supporting the victim's testimony that there was a hole in the dashboard of the defendant's truck where a radio would have been located. The State also established that when the defendant was arrested two days after the assault, he had a cut on his right hand in the area where the victim claimed to have bitten him. Furthermore, the State produced a wool overcoat, seized from the defendant's home, that the victim identified as the coat worn by the defendant during the assault. The defendant was convicted of all three charges and sentenced to life imprisonment under the extended term of imprisonment statute, RSA 651:6, II(d) (1986).

After sentencing, the defendant moved for a new trial on the grounds that he had been denied the right to effective assistance of counsel as guaranteed by the New Hampshire and Federal Constitutions. The trial court denied the defendant's motion. On appeal, the defendant contends that his trial attorney made several errors in conducting his defense, the cumulative effect of which constituted a denial of his right to effective assistance of counsel.

■ When this court evaluates a claim of ineffective assistance of counsel, the "analysis is the same under both the Federal and State Constitutions." *State v. Anaya*, 134 N.H. 346, 351, 592 A.2d 1142, 1145 (1991). Both constitutions "measure the defendant's right to assistance of counsel under an objective standard of reasonable com-

petence." *State v. Faragi*, 127 N.H. 1, 4, 498 A.2d 723, 726 (1985); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). The critical issue is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Anaya*, 134 N.H. at 351, 592 A.2d at 1145 (quoting *Strickland v. Washington*, 466 U.S. at 686).

■ To prevail on this claim, the defendant must satisfy a two-prong test. He must show that his trial attorney's performance was deficient. *See State v. Fennell*, 133 N.H. 402, 405, 578 A.2d 329, 331 (1990). He must prove that the attorney "made such egregious errors that [the attorney] was not functioning as the 'counsel' guaranteed" by the Federal and State Constitutions. *Id.* With respect to this first element, we "start with the strong presumption that counsel's conduct falls within the limits of reasonable practice, bearing in mind the limitless variety of strategic and tactical decisions that counsel must make." *Faragi*, 127 N.H. at 5, 498 A.2d at 726. Further, the defendant must prove that the trial attorney's performance, if deficient, actually prejudiced his defense. *Id.* He must demonstrate that there is a "reasonable probability" that the result of the proceeding would have been different had he received competent legal representation. *Id.* (quotation omitted). A reasonable probability "is a probability sufficient to undermine confidence in the outcome" of the case. *Id.* (quotation omitted).

We recognize that the preferable course in a challenge based on ineffective assistance of counsel is to require the defendant to prove as a threshold matter that the alleged error by counsel prejudiced his case. *Id.; see also State v. Chase*, 135 N.H. 209, 212, 600 A.2d 931, 933 (1991). *But cf. State v. Morse*, 135 N.H. 565, 567–68, 607 A.2d 619, 620–21 (1992) (addressing first whether counsel's representation was deficient). If the defendant cannot demonstrate such prejudice, "we need not even decide whether counsel's performance fell below the standard of reasonable competence." *Faragi*, 127 N.H. at 5, 498 A.2d at 726; *see also Strickland v. Washington*, 466 U.S. at 697. Courts, however, have the flexibility to adopt the analytic approach that promotes clarity and ease of review. *See Strickland v. Washington*, 466 U.S. at 688, 697. In this appeal, where the defendant argues that the cumulative effect of several alleged errors denied him the right to effective assistance of counsel, we find it helpful to address the merits of each claim of error, and consider the issue of prejudice only if there is a legitimate question as to whether counsel's conduct was indeed deficient.

The defendant first contends that his trial attorney failed to adequately present the defense that the defendant was temporarily insane at the time of the sexual assault. During a deposition taken four days before trial, the victim stated that she noticed a sudden change in the defendant's demeanor immediately following the sexual assault. The deposition was not recorded due to an equipment malfunction. On the basis of this deposition, the defendant's attorney requested a continuance so that he could further investigate "the development of a new defense for the defendant of temporary insanity." The trial court denied the request, and at trial the defendant's attorney pursued two alternative defenses, one based on the defendant's alleged temporary insanity, and a second based on conflicts in the victim's testimony. The defendant now argues that his attorney erred in pursuing the temporary insanity defense when he had been unable to fully prepare this defense before trial. The defendant also claims that his attorney erred in failing to preserve a record of the victim's deposition.

 We do not find that the defendant has proved that his trial attorney's handling of the insanity defense constituted deficient representation. Trial counsel's strategic decisions are afforded a high degree of deference, and it is not this court's function to seize on the fact of a defendant's conviction to speculate as to the propriety of a defense tactic. *See Strickland v. Washington*, 466 U.S. at 689. The defendant, who has the burden of proof in this appeal, *see Fennell*, 133 N.H. at 405, 578 A.2d at 331, refused to waive the attorney-client privilege during the hearing for a new trial, thereby preventing his attorney from discussing his defense strategy with any specificity. The State has not argued that the fact of non-waiver should preclude the defendant from raising his incompetency of counsel claim. We note, however, that there was evidence that the defendant's attorney had the results of a psychological evaluation performed on the defendant prior to trial. We can assume the attorney considered the insanity defense before deposing the victim. That he pursued this defense at trial, even though it ultimately proved unsuccessful, is not clearly indicative of deficient representation. In light of the obvious strength of the State's case, the insanity defense might well have been one of the few options available to the defendant's attorney at trial.

 In regard to the lack of a transcript of the victim's deposition, we have previously recognized that trial counsel's failure to "take notes, to record the rulings made in chambers conference, or to oth-

erwise protect the record, is in itself evidence of ineffective representation." *State v. Staples*, 121 N.H. 959, 963, 437 A.2d 266, 268 (1981). This is not a case, as in *Staples*, where an incomplete record of a prior judicial ruling closed an avenue of appeal. *Id.* at 964, 437 A.2d at 268. Rather, we are presented only with the absence of a recording of the victim's deposition, an absence, we should note, that was attributed to a mechanical failure rather than to defense counsel's wilful or negligent conduct. We do not find that this mechanical failure rendered counsel's conduct deficient.

■ The defendant argues that his attorney erred by not moving to suppress a .38 caliber shell that had been seized from the defendant's truck. The defendant contends that his attorney was unaware of the shell's existence prior to trial and, therefore, should have filed a motion to bar the admission of this evidence. The defendant, however, does not allege that the State concealed the shell prior to trial, and he makes no attempt to show why such a motion, if filed, would have been granted. He does not point to any infirmity in the search that led to the shell's seizure. Nor does he challenge the relevancy of the shell, which corroborated the victim's testimony that she had fired a .38 caliber handgun twice during the sexual assault. Moreover, regardless of whether the defendant's attorney knew of the shell's existence before trial, the record indicates that he executed a credible strategy to minimize the damaging effects of this evidence. He called as a witness the defendant's father, who testified that the defendant owned a gun that used .38 caliber shells. He also introduced expended .38 caliber shells that had been obtained from the defendant's home.

■ The defendant next argues that his attorney erred in failing to object when the State used testimony of the victim's husband, rather than ballistics evidence, to connect the shell with the victim's handgun. The State contends that ballistics evidence was not necessary, and further was unattainable in this case because the victim's handgun was never located after the sexual assault. The "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.H. R. Ev. 901(a). The "proof necessary to connect an evidentiary exhibit to a defendant may be made by circumstantial evidence." *State v. Reid*, 135 N.H. 376, 383, 605 A.2d 1050, 1054 (1992) (quotation omitted). "The contested evidence, if otherwise relevant, should be admitted once a prima facie case has been made on the issue" of identification

or authentication. *Id.* (quotation omitted). In this case, the victim's husband, a police officer who was familiar with the victim's handgun, had loaded the weapon, and thus had personal knowledge of the type of ammunition it held at the time of the assault. He testified that the shell introduced at trial was identical to the particular type of shells he had used to load the handgun. The lack of ballistics evidence was not fatal to the admissibility of the shell, but could be considered by the jury in evaluating the probative value attributable to this evidence. *See id.*

The defendant further contends that his attorney erred in failing to file a motion to suppress the victim's out-of-court identification of the defendant. Shortly after the sexual assault, a sheriff from the Carroll County Attorney's Office presented the victim with an array of six photographs, including one of the defendant. The victim immediately identified the defendant as her assailant. At trial, the victim identified the defendant in the courtroom, but she did not recognize the photograph that had provided the basis for her earlier out-of-court identification. The defendant's attorney moved for a mistrial, arguing that the integrity of the identification process had been tainted to the prejudice of the defendant. The trial court overruled the motion after the victim's failure to recognize the photograph that had been used in the out-of-court identification was explained when the victim testified that she had seen only photocopies of the defendant's photograph since she performed the out-of-court identification one and a half years earlier, and after she easily identified a photocopy of that photograph at trial.

We do not find that the defendant's attorney erred by not moving to suppress the pretrial identification. The victim's ability to identify the defendant did not become an issue until the State showed her the original photograph that had been used in the photograph array. A sound explanation was given for the victim's confusion. In addition, the out-of-court identification was not central to the State's ability to identify the defendant; the victim testified that the photograph "had absolutely nothing to do with" her recognition of him. We have cautioned trial counsel against filing motions to suppress where grounds for granting such motions are clearly lacking. *See Faragi*, 127 N.H. at 7, 498 A.2d at 728. In this case, the defendant has failed to demonstrate that his attorney had a legitimate basis for filing a motion to suppress the out-of-court identification.

The defendant argues that his attorney should have filed a motion to dismiss the case when the State lost what he claims were two pieces of exculpatory evidence: the ring that the victim pulled from

the defendant's hand, and a hat found near the crime scene. A police officer testified that the hat was inscribed with a name different from the defendant's, and initials engraved on the inside of the ring similarly did not match those of the defendant. The defendant contends that this evidence would have strengthened his case, and that its loss violated his due process rights. Accordingly, he claims that his attorney's failure to move for dismissal constituted ineffective assistance of counsel.

We find that neither piece of evidence was favorable to the defendant's case, and that his attorney did not err by not moving for dismissal based on the loss of this evidence. In regard to the lost hat, this evidence was of only questionable relevance. Police found the hat the day after the assault, in the middle of the road that passed the crime scene. The victim never suggested that the defendant wore a hat, and the defendant made no attempt to connect this evidence with the assault. We fail to perceive how this evidence would have benefitted the defendant. As for the ring, its loss likely strengthened, rather than prejudiced, the defendant's case. The victim testified that the ring was silver with a turquoise stone and an engraving on the inside. The defendant's former fiancee provided uncontroverted testimony that the defendant owned a ring that matched this description, and that the ring was engraved with initials different from the defendant's. Since this evidence was not favorable to the defendant, a motion for dismissal based on an alleged due process violation would have proved fruitless. *See State v. Moulton*, 131 N.H. 467, 468, 554 A.2d 1292, 1293 (1989). We therefore find that the defendant's attorney did not err in failing to file such a motion.

The defendant finally argues that his attorney erred by failing to properly object at trial when the victim testified about her perceptions and fears during the sexual assault. The victim had been permitted to describe, over defense counsel's general objection, her fears that she "was going to die" and that the defendant was "going to try to kill" her. She also described having "felt that [she] was not the only one that had been in that position." On an earlier appeal to this court, we declined to consider whether this evidence was properly admitted, holding that defense counsel, by failing to raise a specific objection at trial, had not preserved the issue for appeal. *See Wisowaty*, 133 N.H. at 607–08, 580 A.2d at 1081. The defendant now contends that had his attorney preserved the objection, his conviction would have been reversed on appeal.

We do not find that the victim's statements concerning her fear that she was going to die, or that the defendant was going to kill

her, were inadmissible at trial, and therefore reject the defendant's claim that his attorney's failure to specifically object to these two statements constituted deficient representation. As a threshold matter, the testimony was relevant. Evidence is relevant if it tends "to make the existence of any fact that is of consequence" more or less probable. N.H. R. EV. 401. The defendant was charged with kidnapping, an offense which is elevated to a class A felony if the victim suffers serious bodily injury. RSA 633:1, II (1986). We have held that serious bodily injury includes psychological injuries and mental anguish. *See State v. Goodwin*, 118 N.H. 862, 868, 395 A.2d 1234, 1237–38 (1978). The victim's testimony concerning her fears during the sexual assault was relevant to whether she suffered psychological harm or mental anguish, and thus was exposed to serious bodily injury, during the incident. The defendant was also charged with aggravated felonious sexual assault, RSA 632-A:2 (1986), *amended by* RSA 632-A:2 (Supp. 1992). The elements of this crime include the use of physical force or threats of physical violence. *See* RSA 632-A:2, I (1986), *amended by* RSA 632-A:2 (Supp. 1992). The victim's recollections concerning her fears that she was going to die, and that the defendant was going to kill her, were consistent with the proof of these crimes.

We further find that the probative value of this testimony substantially outweighed its possible prejudice. *See* N.H. R. EV. 403. The defendant draws our attention to a factually similar case, *State v. Dustin*, 122 N.H. 544, 547, 446 A.2d 1186, 1188 (1982), in which a defendant appealed his conviction for criminal restraint, arguing that the trial court erred in allowing the victim to testify about her fear of being beaten or raped during her captivity. We first found that this testimony was relevant to the issue of whether the victim was exposed to a risk of serious bodily injury within the meaning of the criminal restraint statute. We next found that the testimony should have been excluded. *Id.* It was not essential to the State's case, since the offense of criminal restraint did not require proof of the victim's state of mind, and other "less inflammatory evidence" showed that the victim had been exposed to risk of serious bodily injury. *Id.* The testimony's potential prejudice therefore outweighed its probative value. *Id.* Nonetheless, we held that the admission of the testimony did not constitute reversible error because the record contained "abundant admissible evidence" from which a rational juror could have concluded that the victim was afraid of suffering serious bodily harm. *Id.* at 547, 446 A.2d at 1189.

■ The victim's testimony in this case was far more relevant than that at issue in *Dustin*. In *Dustin*, the victim provided explicit testimony as to her fear of being raped and assaulted, two violent crimes for which the defendant had not been charged. *Id.* at 546, 446 A.2d at 1188. Here, the victim's testimony that she felt her life was in jeopardy was relevant not only to the crime of kidnapping, it was central to the crime of aggravated felonious sexual assault, since the elements of the crime include the use of physical force or threats of physical violence. Its probative value substantially outweighed any potential prejudice inuring to the defendant.

■ In regard to the victim's third statement concerning her feeling that she "was not the only one that had been in that position," we agree with the defendant that the defendant's attorney erred by failing to specifically object to this statement, but we do not find, under the second prong of the *Strickland* test, that its admission actually prejudiced the defendant's case. In determining whether conduct by defense counsel actually prejudiced the defendant, a court must examine the "totality of the evidence before the judge or jury." *Avery v. Cunningham, Warden,* 131 N.H. 138, 149, 551 A.2d 952, 958–59 (1988) (quotation omitted). In this case, given the strength of the State's evidence, which corroborated many of the critical elements of the victim's testimony, we do not find that the defendant has shown a reasonable probability that the outcome would have been different if the victim's vague testimony concerning other victims of sexual assault had been excluded.

*Affirmed.*

All concurred.